IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**J & J SPORTS PRODUCTIONS, INC.,**

    Plaintiff,

v.

**NATIVIDAD SILVA** and
**REPUBLICA MEXICAN RESTAURANT LLC,**
an Oregon limited liability company,

    Defendants.

No. 3:17-cv-00681-MO

OPINION AND ORDER

**MOSMAN, J.,**

This matter comes before me on Plaintiff J & J Sports Productions, Inc.'s Motion for Default Judgment by the Court [13]. For the reasons below, I GRANT the Motion as it pertains to Defendant Republica Mexican Restaurant LLC, DENY the Motion as it pertains to Defendant Natividad Silva, and award statutory damages of $3,000 and enhanced damages of $10,000.

## BACKGROUND

Plaintiff J & J Sports Productions is a California corporation that held the exclusive commercial distribution rights to the "Fight of the Century," a boxing match between Floyd Mayweather Jr. and Manny Pacquaio held on May 2, 2015 ("the Mayweather/Pacquiao match"). Compl. [1] ¶ 20. Defendant Natividad Silva is the manager and owner of Defendant Republica Mexican Restaurant LLC ("Republica"), a restaurant/club located in Hillsboro, Oregon. Compl. [1] ¶¶ 9–13. J & J Sports sent three private investigators to Republica on fight night. Each of the

1 – OPINION AND ORDER

investigators paid a cover charge of $10–$15. Motion for Default Judgment [13], Ex. 1 at 9–16. Two investigators observed TVs showing the under-card match between 7:00–8:30 P.M., and one investigator observed TVs showing the Mayweather/Pacquiao match after 9 P.M. Motion [13], Ex. 1 at 9–16. The investigators estimated the capacity of Republica to be 90–150 people, although the investigator who saw the Mayweather/Pacquaio match estimated there were 180–200 people in the bar at the time. Motion [13], Ex. 1 at 9–16.

J & J Sports brought claims against Republica for violations of the Communications Act of 1934, 47 U.S.C. § 605, the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, and for trespass to chattels under Oregon law, alleging that Republica and Silva did not pay for access to the Mayweather/Pacquaio match. Personal service was effected on Natividad Silva and on Republica via Natividad Silva on May 16, 2017 [5]. Neither defendant answered or otherwise appeared, and I granted J & J Sports's Motion for Entry of Default on August 14, 2017. [10]. J & J Sports now seeks a default judgment in the amount of $49,000 under 47 U.S.C. § 605 and for trespass to chattel. Motion [13]. Specifically, J & J seeks $10,000 in statutory damages and $30,000 in enhanced damages under 47 U.S.C. § 605, and $9,000 in actual damages for trespass to chattels. Motion [13].

## LEGAL STANDARD

After the entry of default, the court may grant default judgment and award damages. Fed. R. Civ. P. 55(b)(2). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam). "Thus, the court must accept plaintiff's facts in the complaint as true, but

the plaintiff must prove damages." *Joe Hand Prods. Inc. v. Holmes*, No. 2:12-CV-00535-SU, 2015 WL 5144297, at *3 (D. Or. Aug. 31, 2015) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)).

## DISCUSSION

### I. Default judgment

The court may consider the following factors when deciding whether to grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). I take each of these factors in turn.

#### A. Factor one: the possibility of prejudice to the plaintiff.

"Courts have found this factor favors default judgment where the plaintiff's only available legal remedy is the default judgment, and, without such a judgment, plaintiff would be left without any recourse for recovery." *Joe Hand Prods.*, 2015 WL 5144297, at *3. Here, defendants have not entered the case or responded in any way, and J & J Sports's only legal remedy is a default judgment. The first factor supports an entry of default judgment.

#### B. Factors two and three: the merits of plaintiff's substantive claim and the sufficiency of the complaint.

District courts often consider these two factors together, because "[t]he Ninth Circuit has suggested that these two factors [both] require that a plaintiff 'state a claim on which the [plaintiff] may recover.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see Joe Hand Prods.*, 2015 WL 5144297, at *3.

### i. 47 U.S.C. § 605 and 47 U.S.C. § 553

J & J Sports alleges liability under two federal communications laws, 47 U.S.C. § 605 and 47 U.S.C. § 553, but only seeks damages in its Motion for Default Judgment under § 605. Compl. [1] ¶¶ 19–33. The two sections both prohibit the unauthorized interception and reception of transmissions, but § 553 applies to cable television transmissions and § 605 applies to interstate radio communications, including satellite television signals. 47 U.S.C. § 553(a)(1) ("No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."); 47 U.S.C. § 605(a) ("No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."); *see DirecTV v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (applying § 605 to satellite television signals).

Where there is no evidence of the method of piracy, as in this case, courts must decide whether to apply § 553 or § 605.[1] There is no consensus on this issue: some district courts in this Circuit apply § 605 in this situation because it allows for more damages and mandates attorney fees. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1199 (N.D. Cal. 2000); *J & J Sports Prods., Inc. v. Greathouse*, No CU-13-00922-PHX-GMS, 2015 WL

---

[1] As this Court recently acknowledged, "[t]he Ninth Circuit has not addressed whether the statutes overlap, but five other circuits have done so." *Joe Hand Prods.*, 2015 WL 5144297, at *4. The majority view is that the two statutes are mutually exclusive, with four circuits concluding that § 605 applies only to satellite television and § 553 applies only to cable television. *See Charter Commc'ns Entm't I v. Burdulis*, 460 F.3d 168, 176–78 (1st Cir. 2006); *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 205–06 (3d Cir. 2001); *J & J Sports Prods. v. Mandell Family Ventures, LLC*, 751 F.3d 346, 352–53 (5th Cir. 2014); *United States v. Norris*, 88 F.3d 462, 466 (7th Cir. 1996). The minority view, held by the Second Circuit, concludes that § 605 applies to both types of piracy. *See Int'l Cablevision v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996).

717907, at *2 (D. Ariz. Feb. 19, 2015). Other district courts apply § 553 instead, because "cable boxes are more easily hidden than satellite dishes and more likely to be the source of transmission," *J & J Sports Prods., Inc. v. Basto*, No. C 10-5122 PJH, 2011 WL 2197756, at *3 (N.D. Cal. June 6, 2011), or because § 553 offers lower damages amounts, *J & J Sports Prods., Inc. v. Tsoulouhas*, No. C08-695Z, 2008 WL 5390936, at *2 (W.D. Wash. Dec. 23, 2008). In a recent case, this court elected the latter option and analyzed piracy claims under § 553, noting that courts "more commonly" apply § 553 where there is no evidence of a satellite dish or a cable box. *Joe Hand Prods.*, 2015 WL 5144297, at *4.

J & J Sports only seeks statutory damages under § 605. This Court recently looked to § 553 in a similar case, where there was no evidence of a satellite dish or a cable box. *See Joe Hand Prods.*, 2015 WL 5144297, at *4. Thus, I also analyze J & J Sports's claims under § 553.[2] "Section 553 prohibits unauthorized interception and receipt of cable programming as well as the manufacture and distribution of equipment to help others pirate cable transmissions. A violation of Section 553 is a strict liability offense that does not require evidence of intent." *Id.* at *5. Direct evidence of signal piracy is not required. *DirecTV, Inc.*, 545 F.3d at 844 ("Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its nature a surreptitious venture and direct evidence of actual interception may understandably be hard to come by.").

### *1. Republica's Liability*

Here, J & J Sports alleges that Republica showed the Mayweather/Pacquaio match despite lacking authorization to do so, and could not have obtained authorization except through J & J Sports. Compl. [1] ¶ 23. J & J Sports also offers the affidavits of three investigators who attest they saw either the main or under-card bout being shown on TVs in Republica during fight night. *See Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999)

---

[2] Analyzing J & J Sports's claims under § 553 does not affect the amount of damages awarded in this case.

5 – OPINION AND ORDER

(holding a violation of the Cable Act occurs where any portion of a pay-per-view event is illegally shown, even a preliminary match). These factual allegations, taken as true, are enough to establish liability for Republica. *See Geddes*, 559 F.2d at 560.

### 2. *Silva's liability*

To show that an individual shareholder of an LLC (like Silva) is liable for violating § 553, district courts have relied on "a standard of individual liability premised on copyright law," under which "a plaintiff must show '(1) the individual had a right and ability to supervise the infringing activities and (2) had an obvious and direct financial interest in those activities.'" *Joe Hand Promotions, Inc. v. Bragg*, No. 13-CV-02725-BAS JLB, 2014 WL 2589242, at *5 (S.D. Cal. June 10, 2014) (quoting *J & J Sports Prods., Inc. v. Walia,* No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011)).

J & J Sports alleges that Silva "manages, controls, and operates" and is a member of Republica, and that on the night in question, "Silva had the right and ability to supervise the activities of the Business" and "had the obligation to ensure that the liquor license of Republica . . . was not used in violation of law." Compl. [1] ¶¶ 9–15. J & J Sports also alleges that "Silva specifically directed or permitted the employees of the Business to unlawfully intercept and broadcast Plaintiff's Program at the Business, or intentionally intercepted, broadcast, and/or published the Program at the Business herself" and that Silva "had an obvious and direct, or at least an indirect, financial interest in the activities of the Business, which included the unlawful interception of Plaintiff's Program." Compl. [1] ¶ 16–17. Taking these factual allegations as true, the Complaint alleges more than Silva's mere involvement as a shareholder, but fails to show that Silva had a "direct financial interest" in showing the Mayweather/Pacquiao match. *See Walia*, 2011 WL 902245 at *3 (concluding that "in order to hold a shareholder of an LLC liable for the LLC's infringing conduct, a plaintiff must allege facts that show the shareholder was 'a

6 – OPINION AND ORDER

moving active conscious force' behind the infringing act itself and that the shareholder derived direct financial benefit from the infringing conduct above and beyond a generic linkage between the profits of the shareholder and those of the LLC."). J & J Sports has not established Silva's liability.

### ii. Trespass to chattels

Under Oregon law, "[t]he elements of a claim for trespass to chattels are, for relevant purposes, the same [as a claim for conversion]; the only arguable differences are the extent of the interference and remedy."[3] *Scott v. Jackson Cty.*, 260 P.3d 744, 752 (Or. Ct. App. 2011). "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969) (quoting Restatement (Second) of Torts § 222A (1965)). "Although appellate courts do not appear to have addressed the issue, Oregon district courts have interpreted 'chattels' to include broadcast licenses as well as certain other legal rights." *Joe Hand Prods.*, 2015 WL 5144297, at *4 (citing *Joe Hand Promotions, Inc. v. Jacobson*, 874 F. Supp. 2d 1010, 1019 (D. Or. 2012)). This court has found viable claims for conversion under very similar circumstances. *Joe Hand Prods.*, 2015 WL 5144297, at *4; *Jacobson*, 874 F. Supp. 2d at 1019. J & J Sports has pleaded a sufficient claim for trespass to chattels against Republica, but not against Silva.

In summary, the second and third *Eitel* factors favor default judgment against Republica for violating § 553 and committing trespass to chattels, but not against Silva.

### C. Factor four: the sum of money at stake in the action.

---

[3] "[T]respass to chattels . . . has been described as the 'little brother of conversion.' It 'allows recovery 'for interferences with the possession of chattels which are not sufficiently important to be classed as conversion.'" *Morrow v. First Interstate Bank of Or., N.A.*, 847 P.2d 411, 413 (Or. Ct. App. 1993) (quoting Prosser and Keeton on Torts at 85).

7 – OPINION AND ORDER

J & J Sports seeks $49,000 in damages. Courts have found amounts such as $3,000,000 and $114,200 weigh against default judgment, *see Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *J & J Sports Prods., Inc. v. Cardoze*, No. C 09–05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010), while amounts such as $6950 do not weigh against entry of default judgment, *see Cardoze*, 2010 WL 2757106, at *5. If the court awards less than the amount requested, this factor may not weigh against plaintiff. *Joe Hand Prods.*, 2015 WL 5144297, at *7. Here, this factor weighs in favor of default judgment, particularly because I do not grant J & J Sports the full amount requested.

### D. Factor five: the possibility of a dispute concerning material facts.

"The fifth factor, the possibility of a dispute concerning material facts, weighs in favor of default judgment when the claims in the complaint are well-pleaded." *Joe Hand Prods.*, 2015 WL 5144297, at *7. Because J & J Sports sufficiently stated claims under factors two and three, this factor favors default judgment.

### E. Factor six: whether the default was due to excusable neglect.

There is no evidence here of excusable neglect. J & J Sports properly served Republica and Silva with pleadings and the motion for default judgment, and neither defendant responded. This factor favors default judgment.

### F. Factor seven: the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

This factor generally weighs against entering default judgment, because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But "courts have consistently concluded 'that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.'" *Joe Hand Prods.*, 2015 WL 5144297, at *8 (quoting *Joe Hand Promotions, Inc. v. Machuca*, 2:13-cv-1228 GEB KJN, 2014 WL

1330749, at *6 (E.D. Cal. Mar. 31, 2014)). Because defendants have not appeared or otherwise responded in this case, this factor does not preclude default judgment.

Because the *Eitel* factors weigh in favor of default judgment, I grant default judgment.

## II. Amount of damages

J & J Sports asks for $10,000 in statutory damages, $30,000 in enhanced damages, and $9,000 in damages for trespass to chattels.

### A. 47 U.S.C. § 553

Under 47 U.S.C. § 553(c)(3)(A)(ii), "the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). Here, J & J Sports asks for $10,000 in statutory damages, the maximum under § 553(c)(3)(A)(ii). In similar cases, courts have looked to the actual cost to license a program. *See J & J Sports Prods., Inc. v. Lopez*, No. C 12–5784 SBA, 2013 WL 6091618, at *4 (N.D. Cal. Nov. 19, 2013). J & J Sports argues it directly lost $9,000 in commercial sublicensing fees. Motion [13] at 15. As evidence, J & J Sports submits an affidavit from the President of J & J Sports, the three investigators' reports, and a "rate card" detailing rates based on capacity. Motion [13-1, 13-2]. But the rate card states that "pricing for this event is based on Fire Code Occupancy," not on actual number of patrons. [13-2]. The investigators gave ranges of capacity from 90–150 people, though their estimates of number of patrons were higher. [13-1]. Given this uncertainty about capacity and fire code occupancy, $3,000 is more appropriate as the sublicense fee corresponding to a site with a capacity of 1–100. *See* Motion [13-2]. I award $3,000 in statutory damages.

In terms of enhanced damages, the court may increase the award in certain circumstances:

> In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

47 U.S.C. § 553(c)(3)(B). In assessing willfulness, "[c]ourts generally consider factors such as repeat violations, substantial unlawful monetary gains, significant actual damages to plaintiff, advertising, cover charges, or charging premium menu and drink prices." *J & J Sports Prods. Inc. v. Miramontes*, No. CV-10-02345-PHX-FJM, 2011 WL 892350, at *2 (D. Ariz. Mar. 14, 2011).

Here, there is some evidence that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *See* § 553(c)(3)(B). Republica charged a $10–$15 cover charge, and an employee told one of the investigators "the fight was on, and the cover charge was $10." [13-1] at 11; *see Miramontes*, 2011 WL 892350, at *2 (granting $10,000 in enhanced damages where the only "aggravating factor" was a sign posted advertising the fight); *but see J & J Sports Prods., Inc. v. Juanillo*, No. C 10-01801 WHA, 2010 WL 5059539, at *1 (N.D. Cal. Dec. 6, 2010) (assessing $500 in statutory damages and no enhanced damages for first-time offender establishment with 150-person capacity, where no cover charge was required). But there is no evidence of any other "aggravating factors." I grant $10,000 in enhanced damages.

### B. Trespass to chattels

J & J Sports asks for $9,000 in damages for trespass to chattels, arguing it directly lost a commercial sublicense fee in this amount. Motion [13] at 15. Because I assess statutory damages, I conclude, like other courts, that "Plaintiff is already being compensated for the cost of the license through the statutory damage award under § 553," and decline to award additional money for trespass to chattels. *See Lopez*, 2013 WL 6091618, at *4.

## CONCLUSION

For the reasons stated above, I GRANT in part and DENY in part the Motion for Default Judgment [13]. I GRANT the Motion for Default Judgment against Defendant Republica Mexican Restaurant LLC on Plaintiff J & J Sports's claim under 47 U.S.C. § 553 and award to J & J Sports statutory damages of $3,000 and enhanced damages of $10,000. I GRANT the Motion for Default Judgment against Defendant Republica Mexican Restaurant LLC on J & J Sports's trespass against chattels claim and award no damages. I DENY the Motion for Default Judgment against Defendant Republica Mexican Restaurant LLC on J & J Sports's claim under 47 U.S.C. § 605 and dismiss that claim. I DENY the Motion for Default Judgment against Defendant Natividad Silva on J & J Sports's claims under 47 U.S.C. § 605 and 47 U.S.C. § 553 and for trespass to chattels and dismiss these claims.

IT IS SO ORDERED.

DATED this ___ day of November, 2017.

MICHAEL W. MOSMAN
Chief United States District Judge